UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KAREN BELLIFEMINE, AMY ZEOLI, MICHELLE POPA, NANCY BEANEY and JENNIFER STORM, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | Case No. 1:07-CV-02207-JGK |
| v. | ) ) | CLASS ACTION |
| SANOFI-AVENTIS U.S. LLC | ) ) ) | |
| DEFENDANT. | ) ) ) ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND RELATED RELIEF**

## TABLE OF CONTENTS

*Page*

INTRODUCTION .................................................................................................................1

I.   FACTUAL BACKGROUND AND LITIGATION HISTORY................................................3

    A.  Ms. Bellifemine Files an Individual and Class EEOC Charge.......................................4

    B.  The Original Complaint..................................................................................................4

    C.  The First and Second Amended Complaints ..................................................................4

    D.  Sanofi-aventis' Motion to Partially Dismiss the Second Amended Complaint ............4

    E.  Plaintiffs' Opposition to sanofi-aventis' Motion to Partially Dismiss .........................5

    F.  The Court's Decision on sanofi-aventis' Motion to Partially Dismiss..........................5

    G.  Sanofi-aventis Serves Subpoenas on Plaintiffs' Current and Prospective
        Employers, and Plaintiffs Move to Quash......................................................................6

    H.  The Parties Conduct Extensive Written Discovery .......................................................6

    I.  Additional Discovery......................................................................................................6

II.  THE MEDIATION AGREEMENT .............................................................................................7

III. PREPARATION FOR THE JUNE 2009 MEDIATION............................................................7

IV. THE JUNE 2009 MEDIATION AND FOLLOW-UP ...............................................................8

V.  THE PARTIES NEGOTIATE A SETTLEMENT AGREEMENT ..........................................8

    A.  Post Mediation Activity..................................................................................................8

    B.  Terms of the Settlement Agreement ...............................................................................8

        1.  The $15,360,000 "Total Settlement Amount".....................................................8

        2.  Continued Benefits Of The Settlement Agreement...........................................9

        3.  Additional Monetary Disbursements................................................................10

        4.  Programmatic Relief...........................................................................................10

VI. UNIQUE FEATURES OF THE SETTLEMENT ...................................................................11

ARGUMENT...............................................................................................................................13

I.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS
     ACTION SETTLEMENT ......................................................................................................13

       A.  The Public Policy in Favor of Class Action Settlements ...........................................13

       B.  The Applicable Standard for Granting Preliminary Approval....................................13

       C.  The Proponent of Preliminary Approval Bears a Light Burden ..................................14

II.  UNDER THE PRECEDENT DISCUSSED ABOVE, THE COURT
     SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ............................17

       A.  The Requirements of Rule 23(a) Are Satisfied ..........................................................18

            1.  The Class Is Sufficiently Numerous....................................................................18

            2.  Questions Of Law Or Fact Are Common To The Class........................................18

            3.  Plaintiffs' Claims Are Typical Of The Class........................................................19

            4.  Plaintiffs Will Fairly And Adequately Protect the Class' Interests......................20

       B.  Plaintiffs Have Fulfilled the Requirements of Rule 23(b)(3) .....................................21

            1.  The Court Can Readily Find Common Issues Predominate..................................21

            2.  A Class Action Is The Superior Method Of Adjudication ...................................22

III. THE PROPOSED CLASS NOTICE AND CLAIM FORM ARE
     APPROPRIATE AND SHOULD BE APPROVED ...............................................................23

CONCLUSION ...........................................................................................................................25

## TABLE OF AUTHORITIES

*Page*

*CASES*

*All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants,*
    203 F.R.D. 403, 416 (S.D.Ind. 2001) .................................................................. 15

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 619-29 (1997) ............................................................... 17, 22, 23

*American Canoe Ass'n v. U.S. E.P.A.,*
    54 F.Supp.2d 621, 625 (E.D.Va. 1999) .............................................................. 21

*Authors Guild, Inc. v. Google, Inc.,*
    No. 05 Civ. 8136(DC), 2009 WL 4434586,
    at *1 (S.D.N.Y. Dec. 1, 2009) ..................................................................... 14, 15

*Bano v. Union Carbide Corp.,*
    273 F.3d 120, 129-30 (2d Cir. 2001) .................................................................. 13

*Blyden v. Mancusi,*
    186 F.3d 252, 270 (2d Cir. 1999) ....................................................................... 22

*Bolanos v. Norwegian Cruise Lines Ltd.,*
    212 F.R.D. 144, 154-55 (S.D.N.Y. 2002) .......................................................... 19

*Cannon v. Texas Gulf Sulpher Co.,*
    55 F.R.D. 308, 313 (S.D.N.Y. 1972) .................................................................. 24

*Cohen v. J.P. Morgan Chase & Co.,*
    262 F.R.D. 153, 157-58 (E.D.N.Y. 2009) .......................................... 17, 18, 19, 21

*Consolidated Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473, 483 (2d Cir. 1995) cert denied, 515 U.S. 1122 (1995) .................... 18

*David v. Showtime/The Movie Channel, Inc.,*
    697 F. Supp. 752, 756 (S.D.N.Y. 1988) ............................................................. 19

*DeMarco v. Nat'l Collector's Mint, Inc.,*
    229 F.R.D. 73, 80 (S.D.N.Y. 2005) .................................................................... 18

*Dodge v. Cty. of Orange,*
    208 F.R.D. 79, 88 (S.D.N.Y. 2002) .................................................................... 19

*Dolgow v. Anderson,*
  43 F.R.D. 472, 494 (E.D.N.Y. 1968), rev'd on other grounds,
  438 F.2d 825 (2d Cir. 1971) ................................................................ 20

*Foti v. NCO Fin. Sys.,*
  No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511,
  at *5-6, 12-13 (S.D.N.Y. Feb. 20, 2008) ........................................... 14

*Fry v. Hayt, Hayt & Landau,*
  198 F.R.D. 461, 467 & n.2 (E.D.Pa. 2000) ........................................ 15

*Grunin v. Klein,*
  513 F. Supp. 114, 122-123 (8th Cir. 1974);
  cert. denied, 423 U.S. 864 (1975) ...................................................... 24

*Guarantee Ins. Agency Co. v. Mid-Continental Rlty Corp.,*
  57 F.R.D. 555, 565-66 (N.D.Ill. 1972) ............................................... 20

*Hall v. Midland Group,*
No. 99-3108, 1999 U.S. Dist. LEXIS17832, (E.D.Pa. 1999)............................ 16

*Handshu v. Communist Party, USA,*
  787 F.2d 828, 832-833 (2nd Cir. 1986) ............................................. 24

*Hnot v. Willis Group Holdings, Ltd.,*
  228 F.R.D. 476, 483 (S.D.N.Y. 2005) ................................... 19, 20, 22

*Horton v. Merrill Lynch, Pierce, Fenner & Smith,*
  855 F. Supp. 825, 827 (E.D.N.C. 1994) ............................................. 16

*In re Baldwin-United Corp.,*
  105 F.R.D. 475 (S.D.N.Y. 1984) ......................................................... 14

*In re First Commodity Corp. of Boston Customers Account Litig.,*
  119 F.R.D. 301, 307 (D. Mass. 1987) ................................................ 16

*In re Ikon Office Solutions, Inc. Securities Lit.,*
  194 F.R.D. 166, 188 (E.D.Pa. 2000) .................................................. 24

*In re Initial Public Offering Secs. Litig.,*
  243 F.R.D. at 87, 93, 91, 85 ................................................. 15, 19, 20, 21

*In re Joint E. and S. Distr. Asbestos Litig.,*
  78 F.3d 764, 778 (2d Cir. 1996) ......................................................... 20

*In re Lupron Mktg. & Sales Practices Litig.,*
  345 F. Supp. 2d 135 (D.Mass. 2004)................................................. 16

*In re Luxottica Group S.p.A. Secs. Litig.,*
    233 F.R.D. 306, 310 (E.D.N.Y. 2006)................................................................. 13

*In re Michael Milken Assocs. Secs. Litig.,*
    150 F.R.D. 46, 53 (S.D.N.Y. 1993)..................................................................... 13

*In re NYSE Specialists Secs. Litig.,*
    260 F.R.D. 55, 70 (S.D.N.Y. 2009)..................................................................... 18

*In re Paine Webber Ltd. P'ships Litig.,*
    171 F.R.D. 104, 124 (S.D.N.Y. 1997)................................................................. 24

*In re Panasonic Consumer Elecs. Prods.*
    Antitrust Litig. 1989 U.S. Dist. LEXIS 6274, at*6................................................. 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
    163 F.R.D. 200, 209 (S.D.N.Y. 1995)................................................................. 13

*In re School Asbestos Litig.,*
    789 F.2d 996, 1010 (3d Cir. 1986) ..................................................................... 21

*In re Serzone Prod. Liab. Litig.,*
    MDL No. 1477, 2004 U.S. Dist. LEXIS 28297, p.*10 (S.D.W.Va. 2004).......... 16

*In re State St. Bank & Trust Co. ERISA Litig.,*
    No. 07 Civ. 8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) .............. 15

*In Re Visa Check/Mastermoney Antitrust Litig.,*
    280 F.3d 124 (2d. Cir. 2001) .............................................................................. 21

*Joblove v. Barr Labs.,*
    466 F.3d 187, 202 (2d Cir. 2006) ....................................................................... 13

*Matter of Skinner Group, Inc.,*
    206 B.R. 252, 261 (Bankr. N.D.Ga. 1997).......................................................... 15

*Mendez v. Rader Corp.,*
    232 F.R.D. 78, 93 (W.D.N.Y. 2005) ................................................................... 21

*Newberg & Conte on Class Actions,*
    (3rd ed. 1995) § 11.25, pp.11-36 to 11-37........................................................... 14

*O'Brien v. Nat'l Prop. Analysts Partners,*
    739 F. Supp. 896, 901 (S.D.N.Y. 1990) ............................................................. 24

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797, 809 (1985) ................................................................................... 23

*Reyes v. Buddha-Bar NYC,*
    No. 08 Civ. 2494(DF), 2009 WL 5841176,
    at *1 (S.D.N.Y. Jan. 29, 2009) ...................................................................... 15, 24

*Robinson v. Metro-North Commuter R.R. Co.,*
    267 F.3d 147, 155 (2d Cir. 2001) ............................................................. 18

*Ross v. A.H. Robbins Co.,*
    100 F.R.D. 5, 7 (S.D.N.Y. 1982) ............................................................... 20

*Seifer v. Topsy's Int'l, Inc.,*
    80 F.R.D. 272, 276 (D. Kan. 1978) ........................................................... 24

*Steinberg v. Nationwide Mut. Ins. Co.,*
    224 F.R.D. at 74.......................................................................................... 18

*Velez v. Novartis Pharms. Corp.,*
    244 F.R.D. 243, 258 (S.D.N.Y. 2007)............................................... 19, 20, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96, 116 (2d Cir. 2005) ............................................................... 13

*Weinberger v. Kendrick,*
    698 F.2d 61, 70 (2nd Cir. 1982) ............................................................... 24

## *STATUTES AND MISCELLANEOUS:*

New York Executive Law § 296 ........................................................................... 5

Fed. R. Civ. P. 23(b)(3)(D)................................................................................... 22

Fed. R. Civ. P. 23(e) ...................................................................................... 13, 15

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 13

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KAREN BELLIFEMINE, AMY ZEOLI, MICHELLE POPA, NANCY BEANEY and JENNIFER STORM, Individually and on Behalf of Others Similarly Situated, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | Case No. 1:07-CV-02207-JGK |
| v. | ) ) | CLASS ACTION |
| SANOFI-AVENTIS U.S. LLC | ) ) | |
| DEFENDANT. | ) ) ) ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND RELATED RELIEF</u>**

After more than two years of litigation, extensive discovery, and mediation under the aegis of nationally-renowned mediators, Eric Green and Carmin Reiss, this gender discrimination class action has been settled and is now ready for preliminary approval.

Under the Settlement Agreement ("Agreement" or "SA"), (Exhibit A to Joint Declaration of Plaintiffs' Co-Counsel, Steven L. Wittels and David Sanford) the Representative-Plaintiffs and the Class of sanofi-aventis U.S. LLC's (hereinafter "sanofi-aventis")[1] current and former female sales force representatives will receive, as consideration to terminate fully and finally any and all differences and disputes with sanofi-aventis, monetary and equitable relief **exceeding $15,000,000 in benefits.** (SA, ¶ 4.1)

---

[1] sanofi-aventis does *not* capitalize the first letter of the company name.

The terms of the settlement not only contain monetary provisions, but also contain programmatic provisions where sanofi-aventis has agreed to engage experts, examine its policies, and make certain changes to its employment practices.  Sanofi-aventis has also agreed to conduct a pay equity analysis of its sales force employees and, where a pay disparity exists based on gender, the company will make upward adjustments to class members' salaries, which will provide them with continuing benefits.

Together, the "programmatic" and "pay equity" components of the settlement can boost the earnings of sanofi-aventis' female sales representatives and ensure improved access to promotional opportunities (SA, § VI). Because the settlement may result in salary increases for Class Members', such benefits could continue into the future and future percentage pay raises could start from a higher base and produce a multiplier effect.  Over the next three years, for example, the value of the $2 million set aside for base pay adjustments could reach nearly $10 million in total additional compensation over that period, which would be a substantial benefit to the Class.

In addition, all of the settlement's monetary component (other than Class Counsel's fees and administration expenses) -- will be used and paid directly to Class Members (SA, ¶¶ 5.2, 6.16).

Controlling precedent strongly favors class action settlements. Plaintiffs accordingly move this Court for an Order:

1. Preliminarily approving the terms of the settlement agreement;

2. Certifying the Class for settlement purposes as follows:

   a. *All female sales force employees employed by sanofi-aventis in the United States for at least one day between May 12, 2005 to the preliminary approval date, excluding individuals who held management level positions higher*

2

*than district sales manager, excluding individuals who previously entered into individual releases as part of individual agreements with sanofi-aventis up to the final approval date, and excluding individuals who opt out of the settlement on a timely basis;*

3. Approving the Class Notice and Claim Form and directing the mailing of these documents to Class Members;

4. Setting a date for a hearing on: (i) final approval of the settlement; (ii) Class Counsel's application for attorneys' fees, plus costs; and (iii) Plaintiffs' motion that "service payments" be made to certain class members

As discussed below, the settlement here easily hurdles the threshold for preliminary approval of a Class Action settlement, and consequently, Plaintiffs' motion should be granted in all respects.

I.      **FACTUAL BACKGROUND AND LITIGATION HISTORY**

The facts are summarized below from the Joint Declaration of Plaintiffs' Co-counsel, Steven L. Wittels and David Sanford (hereafter, "Joint Dec.") to which the Court is respectfully referred.

### A.   Ms. Bellifemine Files an Individual and Class EEOC Charge

On March 8, 2006, Karen Bellifemine, a Senior Cardiovascular Specialty Sales Representative for sanofi-aventis, filed a class charge of gender discrimination with the United States Equal Employment Opportunity Commission (EEOC) on behalf of herself and all sanofi-aventis female employees.  (Joint Dec., ¶ 12) In that charge, Ms. Karen Bellifemine alleged that sanofi-aventis engaged in "a pattern and practice of discrimination against its female employees" both in pay and promotions.  (*Id.* at ¶ 12) Ms. Bellifemine received her Notice of Right to Sue on or about December 22, 2006, and timely filed suit within ninety (90) days from receipt of the notice.  (*Id.* at ¶ 12-13)

### B.   The Original Complaint

On March 14, 2007, Karen Bellifemine filed a class action discrimination complaint in the United States District Court for the Southern District of New York.  (*Id.* 13).  She brought the case on behalf of herself and "all female citizens of the United States at any time during the applicable liability period." (*Id.*)

### C.   The First and Second Amended Complaints

On August 28, 2007, Plaintiffs filed a First Amended Complaint to include Amy Zeoli, Michelle Popa, and Sue Sullivan, and on January 31, 2008, Plaintiffs filed a Second Amended Complaint to add Nancy Beaney and Jennifer Storm.

### D.   Sanofi-aventis' Motion to Partially Dismiss the Second Amended Complaint

On February 29, 2008, sanofi-aventis filed a motion to partially dismiss Plaintiffs' Second Amended Complaint seeking to dismiss many of Plaintiffs' allegations of pay disparities. (Joint Dec., ¶ 15).  In that motion, sanofi-aventis argued on a number of grounds that all of Plaintiffs' claims were untimely. Finally, Defendant asserted that

because Plaintiffs Zeoli, Storm, Beaney and Popa never lived or worked in New York, the Court should dismiss any claims alleged by these Plaintiffs under New York Executive Law § 296. (Joint Dec., ¶ 16).

E.     **Plaintiffs' Opposition to sanofi-aventis' Motion to Partially Dismiss**

Plaintiffs filed an opposition to Defendant's partial motion to dismiss on April 10, 2008 and concurrently filed a motion for leave to file a Third Amended Complaint. Plaintiffs opposed Defendant's motion, arguing that Ms. Bellifemine's Charge was timely but that the facts as set forth in the Second Amended Complaint contained errors in the alleged dates.  When these errors were corrected, Ms. Bellifemine's complaint contained timely pay allegations, and consequently, at the pleadings stage, the remaining Plaintiffs could piggy-back their pay claim upon Ms. Bellifemine's Charge. (*Id.* at ¶ 17)

Finally, Plaintiffs conceded that the New York Human Rights Law ("HRL") did not apply to non-New Yorkers, Plaintiffs Zeoli, Beaney, Popa and Storm, but maintained that Ms. Bellifemine preserved the right to bring a cause-of-action for a subclass of New York employees.   Plaintiffs sought leave to file a Third Amended Complaint to implement these changes and update the class claims, and Plaintiffs concurrently filed a Motion to Amend/Correct/To File a Third Amended Complaint. (*Id.* at ¶ 18)

F.     **The Court's Decision on sanofi-aventis' Motion to Partially Dismiss**

On April 16, 2008, the Court granted Plaintiffs' Motion to Amend/Correct and To File a Third Amended Complaint.  On May 5, 2008, sanofi-aventis answered Plaintiffs' Third Amended Complaint.  On May 22, 2008, the Court denied as moot Defendant's Motion to Dismiss the Second Amended Complaint on the grounds that Defendant had filed an answer to Plaintiffs' Third Amended Complaint.  (*Id.* at ¶ 19).

G.     **Sanofi-aventis Serves Subpoenas on Plaintiffs' Current and Prospective Employers, and Plaintiffs Move to Quash**

On June 23, 2008, Plaintiffs filed a Motion to Quash Third Party Subpoenas, in which they argued that the Court should quash five third-party subpoenas that sanofi-aventis served on the current and prospective employers of Class Representatives. Judge Koeltl referred the matter to Magistrate Judge Gorenstein. (*Id.* at ¶ 20).On July 24, 2008, after lengthy oral argument, Judge Gorenstein granted Plaintiffs' Motion to Quash, enjoining compliance with the subpoenas.

H.     **The Parties Conduct Extensive Written Discovery**

Throughout 2008, the parties conducted extensive written discovery, during which they exchanged extensive and detailed interrogatory responses and millions of pages of relevant documents.  As part of Defendant's production, sanofi-aventis also provided Plaintiffs with millions of rows of employment data over multiple years pertinent to the claims of the female sales class, including pay and promotion information for all employees who worked in the field sales force for at least one day from January 1, 2005 until March 14, 2008.  (*Id.* at ¶ 21).  Sanofi-aventis provided complete historical data for the relevant population.

I.     **Additional Discovery**

The parties continued to engage in on-going document productions and produced additional W-2 payroll data and other supplemental employment data.  Sanofi-aventis also began to depose the Named Plaintiffs beginning with Plaintiff Michelle Popa on January 24, 2009.  The parties subsequently began discussing the possibility of mediation and in May of 2009, agreed to attempt to hold two mediation sessions: on June 15 and 16, 2009.  (*Id.* at ¶ 22)

## II.     THE MEDIATION AGREEMENT

On April 30, 2009 – culminating weeks of negotiations – the parties signed a mediation agreement, whereby sanofi-aventis and the named Plaintiffs, individually, and on behalf of a potential class of current and former sanofi-aventis female sales employees, agreed to a non-binding mediation of the individual and class claims alleged in the lawsuit. To facilitate the mediation process, both sides agreed to exchange – no later than one week before the mediation – expert analyses, including regression analysis and damage assessments, as well as mediation statements conveying the parties' respective positions. (*Id.* at ¶ 23)

## III.    PREPARATION FOR THE JUNE 2009 MEDIATION

Counsel for Plaintiffs retained the services of Dr. Janice Fanning Madden, a Professor at the University of Pennsylvania and a specialist in labor economics and statistics. After analyzing the sanofi-aventis data, Dr. Madden concluded that the sanofi-aventis female sales force had a statistically significant probability of being both under-paid and under-promoted compared to men across the entire field sales force at sanofi-aventis. (*Id.* at ¶ 24)  Sanofi-aventis retained Dr. Bernie Siskin who analyzed the relevant employment data and prepared statistical results that showed that there was no pattern and practice of discrimination against female sales employees in terms of pay or promotion.   The parties exchanged their statistical analyses and underlying data assumptions to facilitate the mediation process and both experts participated in a conference call during the mediation to discuss the statistical results and the relative strengths of their various approaches to the data.

## IV.   THE JUNE 2009 MEDIATION AND FOLLOW-UP

Under the guidance of mediators, Eric Green and Carmin Reiss, the parties engaged in a two-day mediation on June 15 and 16, 2009.  Following the initial mediation session, the parties held a follow-up mediation session on November 17, 2009. During this time, the parties participated in several conference calls with assistance from the mediators and their respective experts.   Through these mediation sessions, sanofi-aventis and the Plaintiffs were able to agree on the broad parameters of a settlement subject to further negotiation of a specific agreement and certain terms of the agreement. (*Id.* at ¶ 25)

## V.   THE PARTIES NEGOTIATE A SETTLEMENT AGREEMENT

### A.   Post Mediation Activity

Class Counsel and sanofi-aventis spent months following the mediation fleshing out the details of the settlement, and drafting and revising the Settlement Agreement. (*Id.* at ¶26)  The parties exchanged and revised numerous drafts of the Settlement Agreement while participating in continuous conference calls and a face-to-face meeting to negotiate the final terms.  Their efforts paid off and an Agreement was signed on January 4, 2010.  (*Id.*)

### B.   Terms of the Settlement Agreement

#### 1.   The $15,360,000 "Total Settlement Amount"

Sanofi-aventis will pay $15,360,000 as a "Total Settlement Amount ("TSA") to settle the lawsuit. The "TSA" is made up of the following components:

- $8,188,000, less applicable costs, to pay the individual monetary claims of all Class Members. This $8.188 million fund is divided into two parts. Sixty percent is allocated to a "Base Pay Regression Component" ($4,912,800.00), and 40% ($3,275,200.00) to the "Claim Form Discrimination Survey

8

Component." The first ("Base Pay") component compensates Class Members for alleged pay disparities, and the second segment represents alleged damages Class Members sustained for alleged emotional distress due to alleged gender discrimination, retaliation, and sexual harassment. To recover under the second prong, Class Members must fill out a claim form questionnaire and, in certain instances, document their claims. (SA, ¶ 5.1).

- $2,047,000 as a "Pay Equity Settlement Fund" to potentially be distributed to Class Members in the form of upward base pay adjustments. This fund will be allocated based upon a Pay Equity Analysis to be conducted by an independent expert. (SA, ¶¶ 4.10, 6.14-16). To the extent that any of the Pay Equity Settlement Fund is not utilized to make upward base pay adjustments, it shall revert to the Base Pay Regression Component of the settlement fund.

- $535,000 as "Service Payments," $375,000 of which is allotted for the five named Plaintiffs and $160,000 to Amy Johnson, Lucy Velez, Beth Green, and Patrice Sutherland (SA, ¶¶ 4.1(ii), 7.1); and

- $4,590,000 as Class Counsel's attorneys' fees, which includes overseeing the claims process and monitoring the settlement agreement. (SA, ¶¶ 4.1(iv), 7.2)

## 2.   Continued Benefits Of The Settlement Agreement

Over the next three years of the settlement term, the value of the pay equity analysis in the settlement may provide an additional $10 million in benefits to the Class. For example, based upon a 30% average annual benefit rate and 5% average annual salary increase, base pay adjustments of approximately $2 million to class members' salaries could result in nearly $10 million in increased total compensation during the three-year settlement term. Because of the compounding effect of the salary increases over time, the value of the $2 million set aside for the pay equity adjustments could reach well beyond $10 million in total additional compensation during the class members' careers at sanofi-aventis.

3.    **Additional Monetary Disbursements**

*In addition* to the total settlement amount, sanofi-aventis will pay up to $150,000 in administrative expenses necessary to carry out the settlement agreement.  (*Id.* ¶ 4.3) This provision ensures that the maximum potential settlement benefit is paid to the Class.

4.    **Programmatic Relief**

Sanofi-aventis is obligated to institute a series of procedures which will ensure equitable pay and promotional treatment for its female sales representatives.   These comprehensive measures, in part, include the following:

- o    "No later than six months after the Final Approval Date, sanofi-aventis will retain a consultant [Industrial Psychologist] at its own expense with the approval of Lead Counsel… to review its complaint and investigation procedures and to make recommendations regarding enhancements of those procedures.  Sanofi-aventis will consider any recommendations and will make good faith enhancements to its procedures consistent with the recommendations." (SA, ¶ 6.9)

- o    A commitment to prohibit gender discrimination at sanofi-aventis, to ensure equal employment opportunity, and to enforce strong non-discrimination, anti-harassment, and anti-retaliation policies.  (SA, ¶ 6.1)

- o    Sanofi-aventis will communicate its commitment to equal employment opportunities for women to all employees by distributing policies prohibiting discrimination, harassment, and retaliation and conducting regular mandatory training on these policies. (SA, ¶¶ 6.2-6.4)

- o    Sanofi-aventis will ensure that it has an effective process for investigating and resolving complaints of alleged discrimination and harassment by instituting specific policies and procedures and providing its Human Resources personnel with appropriate training and instruction.  (SA,¶¶ 6.5-6.8)

- o    "All available district manager positions will be posted on sanofi-aventis' Internal Career Center for a minimum of five days, except in the case of rotational programs, developmental programs, and/or exigent business circumstances.  Minimum requirements for qualification for a management position will be available on the Internal Career Center." (*Id.* at ¶ 6.10).

- o    Sanofi-aventis will provide diversity training to all management-level

employees on a no less than annual basis.  (*Id.* at ¶ 6.11)

o      "The Industrial Psychologist retained pursuant to bullet point 1 above shall also evaluate the feasibility of permitting applicants for management positions to apply anonymously when a position is posted on sanofi-aventis' Internal Career Center and shall make recommendations regarding such anonymous application procedures.   Sanofi-aventis will consider any recommendations and will make good faith enhancements to its procedures consistent with the recommendations."  (*Id.* at ¶ 6.12).

o      Sanofi-aventis will undertake an enforceable obligation to "continue to support its Wise organization, which currently offers mentoring and training programs to female employees."  (*Id.* at ¶ 6.13).

o      "Within thirty (30) days of the Final Approval Date, sanofi-aventis shall establish an Internal Compliance Panel... charged with the responsibility for ensuring that sanofi-aventis complies with the terms of this Agreement."  The Panel is to be comprised of senior representatives from the company's HR, Legal, and Compliance Departments, to meet at least semi-annually, and to provide an annual progress report to Class Counsel.  (*Id.* at ¶ 6.18)

## VI.   UNIQUE FEATURES OF THE SETTLEMENT

The settlement agreement may have an impact on female sales force employees' salaries going forward. Under the "Pay Equity" provisions, $2,047,000 will be used to conduct a pay equity analysis and, where a pay disparity exists based on gender, sanofi-aventis will make upward adjustments to class members' salaries.  Consequently, future pay raises could start from a higher base salary, thus having a significant future impact on class members' salaries.  Base pay adjustments made pursuant to this component of the settlement could also be factored into the Class Members' benefits, bonuses, and other auxiliary compensation.  (SA, ¶ 5.7; Joint Dec. ¶ 32)  Class Counsel estimates that this escalating effect could have a potential monetary value to the class of more than $10 million over the next three years.  (Joint Dec. ¶ 32)  Moreover, there is no reversion of settlement dollars to sanofi-aventis. All monetary sums will be paid to class members. (SA, ¶¶ 5.2, 6.16)

Class Counsel have an ongoing role in assuring that sanofi-aventis complies with all terms of the settlement agreement, including the comprehensive programmatic relief designed to continue to ensure equal opportunity for women at the company. This responsibility continues even after the final approval order is entered. (*See* SA, § 3(B), specifying a three-year duration of the settlement terms; ¶ 6.19, Compliance)

As we now demonstrate, the settlement fulfills all the prerequisites for preliminary approval. The Court should thus grant preliminary approval and the related relief Plaintiffs request in this motion.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD PRELIMINARILY
APPROVE THE CLASS ACTION SETTLEMENT**

**A.     The Public Policy in Favor of Class Action Settlements**

The Second Circuit has recognized that there is a strong public interest in the

settlement of complex litigation, particularly class actions. *See Joblove v. Barr Labs.,*

466 F.3d 187, 202 (2d Cir. 2006); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96,

116 (2d Cir. 2005); *Bano v. Union Carbide Corp.,* 273 F.3d 120, 129-30 (2d Cir. 2001);

*see also In re Luxottica Group S.p.A. Secs. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006)

("Class action suits readily lend themselves to compromise because of the difficulties of

proof, the uncertainties of the outcome, and the typical length of the litigation. There is a

strong public interest in quieting any litigation; this is particularly true in class actions.")

(internal quotations omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D.

200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public

interest in settling and quieting litigation, and this is particularly true in class actions.");

*In re Michael Milken Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).  That policy

supports preliminarily approving the class action settlement here.

**B.     The Applicable Standard for Granting Preliminary Approval**

Under Federal Rule of Civil Procedure 23(e), a class action settlement must be

approved by the court before a case may be dismissed or compromised. The court may

approve a settlement that binds class members "only after a hearing and on finding that it

is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).   There are three steps that

must be taken when a court approves a settlement: (1) the court must **preliminarily**

13

approve the proposed settlement; (2) class members must be given notice of the proposed settlement; and (3) after holding a final, "fairness hearing," the court gives **final** approval to the settlement. _See, e.g., Foti v. NCO Fin. Sys._, No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511, at *5-6, 12-13 (S.D.N.Y. Feb. 20, 2008).

The overwhelming weight of authority agrees with this procedural scenario - approving class action settlements involves a two-stage process:

> First, counsel submit the proposed terms of the settlement and the Court makes a **preliminary** fairness evaluation. . . .   _If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the class members of a formal fairness hearing at which arguments and evidence may be presented in support and in opposition to the settlement. Manual for Complex Judicial Litigation_, Third (1995), § 30.42, pp. 236-237.

_See also_ Newberg & Conte on Class Actions, (3rd ed. 1995) § 11.25, pp.11-36 to 11-37.

Courts in the Southern District concur with this prevailing view. In the seminal case of _In re Baldwin-United Corp._, 105 F.R.D. 475 (S.D.N.Y. 1984), Judge Brieant discussed the two-stage process for approving class action settlements. The court framed the issue on preliminary approval as whether the settlement is "sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard," that is, whether the proposed settlement is "sufficiently substantial at this stage to present it to the [class members] and conduct a final fairness hearing on notice." _Id._ at 482.

## C.   The Proponent of Preliminary Approval Bears a Light Burden

_See The Authors Guild, Inc. v. Google, Inc._, No. 05 Civ. 8136(DC), 2009 WL 4434586, at *1 (S.D.N.Y. Dec. 1, 2009) ("Preliminary approval of a class action settlement proposal is at most a determination that there is what might be termed

14

'probable cause' to submit the settlement proposal to class members and hold a full-scale hearing as to its fairness.").

In the initial stage – determining whether notice is warranted – courts apply the relaxed standards delineated in the oft-quoted passage from the *Manual for Complex Judicial Litigation*. *See* <u>Authors Guild</u>, 2009 WL 4434586, at *1 ("At the preliminary approval stage, the Court need decide only if the proposed settlement 'fits within the range of possible approval.'"); *In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488, 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009)(same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494(DF), 2009 WL 5841176, at *1 (S.D.N.Y. Jan. 29, 2009)(settlement is "within the range of possible settlement approval such that notice to the Class is appropriate;" is the result of extensive, arm's length negotiations; and is non-collusive); *In re Initial Public Offering Secs. Litig.*, 243 F.R.D. at 87, 93 (proposed settlement "falls within the range of possible approval").[2]

*See also Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 & n.2 (E.D.Pa. 2000) ("In conditionally approving a class action, it is not necessary for the court to rule on the merits of the plaintiff's cause of action."); *In the Matter of Skinner Group, Inc.*, 206 B.R. 252, 261 (Bankr. N.D.Ga. 1997) ("At the first stage, a court preliminary determines whether 'probable cause' exists to certify the class and issue notification settlement terms.  If such

---

[2] <u>*Accord All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*</u>, 203 F.R.D. 403, 416 (S.D.Ind. 2001) ("The purpose of a preliminary hearing . . . is to prepare the way for a fairness hearing so that the parties may receive court approval of their settlement as required by Fed. R. Civ. P. 23(e). At the fairness hearing the settlement is examined to ensure that it is 'fair, reasonable, and adequate.' . . . All that is required at the preliminary hearing in order to progress to the fairness hearing is that the proposed settlement be 'within the range of possible approval.' . . . This bar is low"); *Tenuto v. Transworld Sys., Inc.*, No. 99-4228, 2001 U.S. Dist. LEXIS 17694, at *3 (E.D.Pa. 2001) ("In evaluating a settlement for preliminary approval, the court determines whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.")

initial endorsement is granted, the court later conducts a final fairness hearing affording all

with an interest in the matter an opportunity to be heard."); *In re Serzone Prod. Liab. Litig.*,

MDL No. 1477, 2004 U.S. Dist. LEXIS 28297, p.*10 (S.D.W.Va. 2004); *In re Lupron*

*Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135 (D.Mass. 2004); *Hall v. Midland*

*Group*, No. 99-3108, 1999 U.S. Dist. LEXIS 17832, (E.D.Pa. 1999).

Accordingly, the Court should preliminarily approve the settlement as fair,

responsible, and adequate to the class if the court is satisfied that it is:

> the result of good faith, aim's length negotiation, and the court see no
> indication of collusion. . . .  *At the preliminary approval state, the court
> should not make any final determination as to the fairness or adequacy
> of the proposed settlement, but instead should merely determine whether
> there is probable cause on these issues sufficient to submit the proposal
> to [class members].  In re Panasonic Consumer Elecs. Prods. Antitrust
> Litig.* 1989 U.S. Dist. LEXIS 6274, at*6 (emphasis added)

As the Court stressed in *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, *163 F.R.D.*

*200, 209 (S.D.N.Y.1995)*:

> The settlement is now before the court for purposes of preliminary
> approval of the settlement as possibly fair, reasonable, and adequate.
> The court's function now is to ascertain whether there is *any reason* to
> notify the class members of the proposed settlement and to proceed with
> a fairness hearing. . . .  If the preliminary evaluation of the proposed
> settlement does not disclose grounds to doubt its fairness or other
> obvious deficiencies. . . and appears to fall within the range of possible
> approval, the court should direct that . . . be given to class members of a
> formal fairness hearing at which arguments and evidence may be
> presented in support of and in opposition to a settlement.

*See also In re First Commodity Corp. of Boston Customers Account Litig.*, 119

F.R.D. 301, 307 (D. Mass. 1987); *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F.

Supp. 825, 827 (E.D.N.C. 1994) (on preliminary approval motion, court evaluates "whether

the proposed settlement is within the range of possible approval.").

Tested by these guidelines, and in light of the strong public policy favoring approval of class actions, the Court should preliminary approve the settlement. As set forth in the accompanying joint declaration of David W. Sanford and Steven L. Wittels, the instant settlement is the product of arms-length negotiations after extensive discovery and significant litigation of the substantive issues in the case, and its terms are fair, reasonable, and adequate. Thus, we respectfully request that the Court grant plaintiffs' motion in its entirety, and order the issuance of notice to class members.

**POINT II**

**UNDER THE PRECEDENT DISCUSSED ABOVE,
THE COURT SHOULD PRELIMINARILY CERTIFY
THE SETTLEMENT CLASS**

The proposed Class is defined as follows:

> *All female sales force employees employed by sanofi-aventis in the United States for at least one day between May 12, 2005 to the preliminary approval date, excluding individuals who held management level positions higher than district sales manager, excluding individuals who previously entered into individual releases as part of individual agreements with sanofi-aventis up to the final approval date, and excluding individuals who opt out of the settlement on a timely basis.*

A court should grant conditional certification of a class for settlement purposes where, as here, the proposed class and class representative satisfy the four requirements of Rule 23(a) of numerosity, commonality, typicality and adequacy, as well as one or more of the three subsections of Rule 23(b). *E.g. Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). *See generally Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-29 (1997) (explaining how Rule 23 applies to a proposed settlement class).

In deciding certification in the context of a proposed settlement, "courts must take **a liberal rather than a restrictive approach** in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen*, 262 F.R.D. at 158 (citations omitted)). All of the requirements of Rule 23(a) and (b)(3) have been met in this action.[3]

### A.     The Requirements of Rule 23(a) Are Satisfied

### 1.     The Class Is Sufficiently Numerous

The sanofi-aventis female sales force class totals approximately 4,000 members. (Joint Dec., ¶ 37)  This number more than suffices to establish numerosity. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) *cert denied,* 515 U.S. 1122 (1995) ("numerosity is presumed at a level of 40 members").

### 2.     Questions Of Law Or Fact Are Common To The Class

The commonality element of Rule 23(a)(2), which requires plaintiffs to demonstrate that a single, common issue of law or fact affects all class members, is considered a "minimal burden for a party to shoulder." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. at 74; *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005) (Rule 23(a)(2) met where plaintiffs and proposed class share a single common question of law or fact); *In re NYSE Specialists Secs. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (single common issue will suffice).  Identity of issues is not required. *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001).

Indeed, "Rule 23(a)(2) does not require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands that the disputed issue of law or fact

---

[3] Absent the proposed settlement, sanofi-aventis would have argued that there are numerous potential manageability problems at trial, which would preclude class certification.

occupies essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed class." *Dodge v. Cty. of Orange,* 208 F.R.D. 79, 88 (S.D.N.Y. 2002) (citation omitted). "[T]he key inquiry of Rule 23(a)(2) is whether the plaintiffs' claims arise from a common nucleus of facts. Such cases are considered particularly appropriate for class action treatment." *David v. Showtime/The Movie Channel, Inc.,* 697 F. Supp. 752, 756 (S.D.N.Y. 1988). *See also Cohen*, 262 F.R.D. at 158 (common course of conduct).

Where, as here, the named Plaintiffs and Class allege that their employer discriminates against a particular class of female employees in terms of pay and promotion, common questions are present, and thus, can be appropriate for certification. *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 258 (S.D.N.Y. 2007)(Lynch, J.) (Court certified class of female pharmaceutical sales representatives who alleged pay and promotion discrimination); *Hnot v. Willis Group Holdings, Ltd.*, 228 F.R.D. 476, 483 (S.D.N.Y. 2005) (certifying class of female corporate officers alleging pay and promotion discrimination). Plaintiffs' claims here involve the same kind of allegations and statistical proof as in the *Velez* and *Hnot* cases, and thus, commonality could be present.

### 3.    Plaintiffs' Claims Are Typical Of The Class

Typicality is measured by the claims of and defenses to the named Plaintiff. The typicality requirement is "not demanding" and dictates only that Plaintiff and the class members make similar liability arguments arising from a common practice or course of events. *In re Initial Pub. Offering Secs. Litig.*, 243 F.R.D. at 85, 91. "As long as plaintiffs assert . . . that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v.*

*Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 154-55 (S.D.N.Y. 2002). Here, the claims of the Representative Plaintiffs and all Class Members derive from the same nucleus of facts -- alleged gender-biased pay and promotion practices, and thus, the questions presented by their claims can be typical of the class. *Velez,* 244 F.R.D. at 268. *See also Hnot,* 228 F.R.D. at 485.

### 4.   Plaintiffs Will Fairly And Adequately Protect the Class' Interests

The adequacy requirement of Rule 23(a)(4) is satisfied where (a) the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation; and (b) plaintiff's interests are not antagonistic to those of the other class members. *In re Joint E. and S. Distr. Asbestos Litig.,* 78 F.3d 764, 778 (2d Cir. 1996); *Hnot,* 228 F.R.D. at 485; *Ross v. A.H. Robbins Co.,* 100 F.R.D. 5, 7 (S.D.N.Y. 1982). Absent a showing to the contrary, adequacy may be presumed. *Dolgow v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y. 1968), *rev'd on other grounds,* 438 F.2d 825 (2d Cir. 1971); *Guarantee Ins. Agency Co. v. Mid-Continental Rlty Corp.,* 57 F.R.D. 555, 565-66 (N.D.Ill. 1972). *See also In re Initial Pub. Offering Secs. Litig.,* 243 F.R.D. at 91 (no reason to think that plaintiffs' and class members' mutual interests are not closely aligned).

Both prongs of the Rule 23(a)(4) adequacy requirement can be satisfied here. First, Plaintiffs' counsel, Sanford Wittels & Heisler LLP, has extensive experience in successfully prosecuting gender discrimination actions. (See Joint Dec. ¶ 40) Second, the named Plaintiffs have gender discrimination claims identical to those of the Class they seek to represent; there is "no fundamental conflict or inconsistency" between their claims that is "so palpable as to outweigh the substantial interest of every class member

in proceeding with the litigation." *In re Initial Pub. Offering Secs. Litig.*, 243 F.R.D. at

85 n.43 (citation omitted).  The adequacy requirement can be satisfied.

### B.     Plaintiffs Have Fulfilled the Requirements of Rule 23(b)(3)

Once a showing is made that the prerequisites of Rule 23(a) are met, the Court

must then examine whether the action satisfies Rule 23(b)(3).

### 1.     The Court Can Readily Find Common Issues Predominate

The predominance mandate can be hurdled in employment suits like this one --

where the defendant's employment policies applied to the class as a whole, rendering the

issues in the case "subject to generalized proof." *E.g. Mendez v. Rader Corp.*, 232 F.R.D.

78, 93 (W.D.N.Y. 2005). *See also In re Initial Pub. Offering Secs. Litig.*, 243 F.R.D. at

91 ("Where, as here, there exists a common nucleus of operative facts affecting all

members, common questions unquestionably prevail."); *Cohen*, 262 F.R.D. at 159

(predominance met "when defendants' wrongful acts involve common practices and/or

standardized documents").

Moreover, the individual issues involved in this matter can be found to relate

primarily to damages which would argue in favor of finding of predominance. *E.g. In Re

Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d. Cir. 2001) (necessity of

calculating of damages on an individual basis does not preclude class certification); *In re

School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).[4]

---

[4] Here, the settlement agreement provides a detailed and comprehensive plan for the distribution of
settlement funds to the Class Members; this allocation is to be based upon expert analyses of sanofi-aventis
employment data and various objective individualized factors (such as length of service) agreed to by the
parties. *Cf. American Canoe Ass'n v. U.S. E.P.A.*, 54 F.Supp.2d 621, 625 (E.D.Va. 1999) (deference to
principle favoring settlement "especially apposite" where experienced parties craft a remedy in complex
litigation providing a "more sensible and practical resolution... than that likely to result from judicial
intervention").

### 2.    A Class Action Is The Superior Method Of Adjudication

Although Plaintiffs believe that class treatment is plainly superior to other methods of litigation, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). *See also Blyden v. Mancusi*, 186 F.3d 252, 270 (2d Cir. 1999). Outside of the settlement context, however, the superiority prong of Rule 23(b)(3) would have required this Court to assess, among other issues, potential challenges in the manageability of the Plaintiffs' proposed class action at trial. Fed. R. Civ. P. 23(b)(3)(D).

Plaintiffs would argue that class treatment is superior to other methods of litigation which would be far more costly for each of thousands of female Class Members to separately litigate this complex case by individually traveling the discovery, deposition, and expert analyses needed to effectively prosecute the action. It would be highly inefficient and wasteful of judicial resources to proceed with individual actions rather than class-based litigation.     *See, e.g., Velez*, 244 F.R.D. at 265-66; *Hnot*, 228 F.R.D. at 483-84. Absent the proposed settlement, however, sanofi-aventis would have argued that there are numerous potential manageability problems at trial. Thus, the risk that Plaintiffs will be unable to advance class claims at trial supports the reasonableness of the proposed settlement of this action.

Furthermore, while the aggregate damages in this case are substantial, the amount of money at stake for many of the Class Members may be too small to warrant individual actions, particularly given the complexity of proof in this matter; failure to certify may

effectively present a barrier to relief for much of the class. *See, e.g., Amchem,* 521 U.S.

591 at 617 ("The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a

solo action prosecuting his or her rights."); *Phillips Petroleum Co. v. Shutts,* 472 U.S.

797, 809 (1985) (pooling plaintiffs' claims in a class action is the only way for plaintiffs

to have their day in court when it would be uneconomical to bring suit individually).

**POINT III**

**THE PROPOSED CLASS NOTICE AND CLAIM FORM ARE<br>APPROPRIATE AND SHOULD BE APPROVED**

Attached to the Settlement are the Notice of Class Action Lawsuit (the "Notice")

which class members will receive by mail, and the claim form (annexed as Exhibit D to

the SA and Joint Dec.). Both the notice and claim form summarize clearly and concisely

the basis of the action, the benefits provided, and the choices available to those class

members who wish to exclude themselves or object to the settlement. The notices thus

exceed the minimal prerequisites for adequate notification to the class.

Class action notices need only meet the requirements of due process, and the

standard is not an exacting one:

> Although no rigid standards governs the contents of notice to class
> members . . . the notice must fairly apprise prospective members of the
> class of the terms of the proposed settlement and the options that are open
> to the in connection with the proceedings. . . .

> Notice need only contain a very general description of the proposed
> settlement, including a summary of the monetary benefits that the class
> would receive and an estimation of attorney fees and other expenses. . . .

> Class members are not expected to rely upon the notices as a complete
> source of settlement information. . . . Ambiguities regarding the
> substantive aspect of the settlement could be cleared up by obtaining a

23

copy of the agreement as provided for in the notice. *O'Brien v. Nat'l Prop. Analysts Partners*, 739 F. Supp. 896, 901 (S.D.N.Y. 1990).

*Grunin v. Klein*, 513 F. Supp. 114, 122-123 (8th Cir. 1974); *cert. denied*, 423 U.S. 864 (1975); *In re Ikon Office Solutions, Inc. Securities Lit.*, 194 F.R.D. 166, 188 (E.D.Pa. 2000). *See further Weinberger v. Kendrick*, 698 F.2d 61, 70 (2nd Cir. 1982) ("Numerous decisions, no doubt recognizing that notices to class members can practicably contain only limited amount of information, have approved very general descriptions of the proposed settlement"); *Handshu v. Communist Party, USA*, 787 F.2d 828, 832-833 (2nd Cir. 1986) ("The district court has virtually complete discretion as to the manner of giving notice to the class. . . . The notice need not include the entire text of the proposed settlement but may describe it in general terms."); *Reyes*, 2009 WL 5841176, at *3.

Under this non-rigorous test, class notices have been approved where the notice did not specify the exact formula to be used in calculating the amounts to be awarded to the individual class members. *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) ("The notice need not be highly specific. . . . Nor does the adequacy of notice turn on the ability of an individual class member to calculate the amount of his or her actual recovery under the settlement."). *Accord*: *Cannon v. Texas Gulf Sulpher Co.*, 55 F.R.D. 308, 313 (S.D.N.Y. 1972); *Seifer v. Topsy's Int'l, Inc.*, 80 F.R.D. 272, 276 (D. Kan. 1978).

At bar, the notices clearly apprise class members of the substance of the action and what the class is getting from the Settlement.

## CONCLUSION

For the reasons provided herein and in the accompanying Joint Declaration of Class Counsel, the Court should grant Plaintiffs' Motion for Preliminary Approval of the Class Settlement and Related Relief.


Dated:  March 12, 2010
        New York, New York


                        Respectfully submitted,


                        _____/s/_____
                        Steven L. Wittels
                        Jeremy Heisler
                        Janette Wipper
                        Andrew Melzer
                        **SANFORD WITTELS & HEISLER, LLP**
                        1350 Avenue of the Americas, 31st Floor
                        New York, NY 10019
                        Telephone: (646) 723-2947
                        Facsimile: (646) 723-2948

                        David W. Sanford
                        Katherine Kimpel
                        **SANFORD WITTELS & HEISLER, LLP**
                        1666 Connecticut Avenue, NW, Suite 310
                        Washington, D.C. 20009
                        Telephone: (202) 742-7780
                        Facsimile:  (202) 742-7776