UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

KAREN BELLIFEMINE, AMY ZEOLI,
MICHELLE POPA, NANCY BEANEY, and
JENNIFER STORM, Individually and on Behalf
of Others Similarly Situated,

              Plaintiffs,

          v.

SANOFI-AVENTIS U.S. LLC,

             Defendant.

C. A. No. 07-2207

CLASS ACTION

SETTLEMENT AGREEMENT

1

## I.    INTRODUCTION

1.1    Subject to approval by the United States District Court for the Southern District of New York (the "Court"), this Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") sets forth the full and final terms by which the Class Representatives Karen Bellifemine, Amy Zeoli, Michelle Popa, Nancy Beaney, and Jennifer Storm (collectively "Class Representatives" or "Named Plaintiffs"), on behalf of themselves and current and former female sales force employees of sanofi-aventis U.S. LLC ("sanofi-aventis," "Defendant," or "Company"), represented by their attorneys, Sanford Wittels & Heisler, LLP and the Law Offices of Grant E. Morris (collectively, "Class Counsel"), and Defendant sanofi-aventis, represented by its attorneys Morgan, Lewis & Bockius LLP, have settled and resolved all claims that have been raised in the Civil Action.

## II.    NATURE AND RESOLUTION OF THIS CASE

2.1    On March 14, 2007, Class Representative Karen Bellifemine filed a Class Action Complaint (the "Complaint") against sanofi-aventis in the United States District Court for the Southern District of New York on behalf of a nationwide class of female sales force employees of sanofi-aventis under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and parallel state and local laws prohibiting gender discrimination, harassment and retaliation. Amy Zeoli, Michelle Popa, Nancy Beaney, and Jennifer Storm were subsequently added as Class Representatives. The Class Representatives filed their Third Amended Class Action Complaint on April 21, 2008.

2.2    In an effort to avoid further unnecessary litigation, cost and expense, the Parties entered mediation after approximately two years of litigation. The Parties retained a well-known and experienced mediator, Eric Green of Resolutions LLC, skilled in mediation of complex class

actions, to assist them in their negotiations. The Parties retained experienced expert Labor Economist/Statisticians to analyze substantial employment data and information for their negotiations. The Parties and their experts discussed extensive regression analyses of the employment data and potential programmatic relief in their negotiations. Both Parties and their Counsel recognize that, in the absence of an approved settlement, they would face a long litigation course, including motions for class certification, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. The Parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, through settlement pursuant to the terms and conditions of this Agreement. After extensive discovery, analysis and deliberation, the Parties are of the opinion that the settlement described in this Agreement is fair, reasonable and adequate. Class Counsel and the Class Representatives believe that the settlement set forth in this Settlement Agreement serves the best interest of the Class based on all the facts and circumstances, including the risk of significant delay and the uncertainty of class certification, as it provides prompt relief for the Class.

2.3    It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims arising from or related to the Civil Action which exist between them and between the Released Parties and the Settlement Class.

2.4    It is the intention of the Parties that this Agreement shall constitute a full and complete settlement and release of all Released Claims against all Released Parties and a dismissal of all pending actions covered by the Released Claims.

2.5    Defendant denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class allegations

3

asserted in the Civil Action. Defendant has agreed to resolve the Civil Action via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by the Class Representatives in the Civil Action upon all procedural and substantive grounds, including without limitation the ability to challenge class action treatment on any grounds and to assert any and all other potential defenses or privileges. The Class Representatives and Class Counsel agree that Defendant retains and reserves these rights, and they agree not to take a position to the contrary. Specifically, the Class Representatives and Class Counsel agree that, if the Civil Action were to proceed, they will not argue or present any argument, and hereby waive any argument that, based on this settlement or this Settlement Agreement or any exhibit and attachment hereto, or any act performed or document executed pursuant to or in furtherance of this settlement or this Agreement, Defendant should be barred from contesting class action certification pursuant to Federal Rule of Civil Procedure 23 on any grounds, or from asserting any and all other potential defenses and privileges. This Agreement shall not be deemed an admission by, or a basis for estoppel against Defendant that class action treatment pursuant to Federal Rule of Civil Procedure 23 in the Civil Action is proper or cannot be contested on any grounds. Additionally, neither the Agreement nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or any of them; or (b) is or may be deemed to be or may be used as an admission or evidence of any fault or omission of the Released Parties, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

2.6    Neither this Agreement nor anything in it, nor any part of the negotiations that occurred in connection with the creation of this Settlement, shall constitute evidence with respect to any issue or dispute in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement.

## III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

A.    **Definitions.** The terms described below shall have the meanings defined in this Section wherever used in this Agreement and in all of its exhibits, including the Notice of Class Action Settlement.

3.1    "CAFA Notice" refers to the notice to be sent to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

3.2    The "Civil Action" means the above-captioned action.

3.3    For purposes of this Agreement, the Class is defined as all female sales force employees employed by sanofi-aventis in the United States for at least one day between May 12, 2005 to the Preliminary Approval Date (the "Class") (together the "Proposed Class Members" and each a "Proposed Class Member"), excluding individuals who held management level positions higher than District Sales Manager, and excluding individuals who entered into individual releases as part of individual agreements with sanofi-aventis up to the Final Approval Date, and excluding individuals who file a timely request to opt-out of the Settlement.

3.4    For purposes of this Agreement, the Class Period shall be defined as May 12, 2005 through the Preliminary Approval Date for this Settlement as defined below in Paragraph 3.22 (the "Class Period" or "Relevant Time Period").

3.5    "Claim Form" means the form agreed upon by the Parties and attached to the

Notice. The Claim Form must be submitted by eligible Proposed Class Members to the Claims

Administrator as part of the claims process of this Settlement pursuant to Section V.A(ii)-V.B.

3.6    "Claimant" means a Proposed Class Member who has submitted a timely and

complete Claim Form.

3.7    "Claims Administrator" means Heffler, Radetich & Saitta LLP ("Heffler,

Radetich & Saitta LLP"), 1515 Market Street, Suite 1700, Philadelphia, PA 19102, telephone:

(215) 665-8870; facsimile: (215) 665-0613.

3.8    "Class Counsel" means the law firms of Sanford Wittels & Heisler, LLP and the

Law Offices of Grant E. Morris.

3.9    "Class Monetary Awards Settlement Fund" means the monetary amount provided

to the Claims Administrator pursuant to Section IV.B.

3.10    "Class Representatives" or "Named Plaintiffs" means Karen Bellifemine, Amy

Zeoli, Michelle Popa, Nancy Beaney, and Jennifer Storm.

3.11    "Counsel for sanofi-aventis" or "Counsel for Defendant" means the law firm of

Morgan, Lewis & Bockius LLP.

3.12    The "Court" means the U.S. District Court for the Southern District of New York.

3.13    "Defendant," the "Company" and/or "sanofi-aventis" mean sanofi-aventis U.S.

LLC.

3.14    "Final Approval Date" or "Final Approval" means the date of entry of the Final

Approval Order for this Settlement.

3.15    "Effective Date" means the date upon which all of the following have occurred:

(1) entry of an order by the Court certifying the Settlement Class; (2) entry of an order or orders

by the Court granting final approval to the Agreement, approving the amount of attorneys' fees and costs and dismissing the Civil Action with prejudice; (3) the period for sanofi-aventis to withdraw from the Agreement (i.e., 30 days from the Claims Administrator's receipt of all timely and complete requests for exclusion submitted by a Class Representative and/or Proposed Class Member) has expired, and (4) the time for appeal has expired and/or any appeal is complete.

3.16    "Labor Economist/Statistician" means the individual who is charged with carrying out the Labor Economist/Statistician's duties pursuant to Sections IV.C and VI.F.

3.17    "Lead Class Counsel" means the law firm of Sanford Wittels & Heisler, LLP.

3.18    "Parties" means the Class Representatives and Defendant.

3.19    "Pay Equity Analysis" or "Pay Equity Study" means the pay equity analysis of existing base pay compensation for all current sales force employees based on their status as of June 16, 2009, which will be conducted by an independent Labor Economist/Statistician, who will recommend pay adjustments for current female sales force employees, with the exception of management level employees who hold titles other than District Sales Manager.

3.20    "Pay Equity Settlement Fund" shall mean the monetary amount reserved to conduct the pay equity analysis and implement its recommendations pursuant to Sections IV.C and VI.F.

3.21    "Preliminary Approval Order" means the Order entered by this Court preliminarily approving the terms of this Agreement, certifying the Settlement Class, and preliminarily approving the payment of attorneys' fees, attorneys' costs, and the Service Payments, as described in this Agreement, scheduling a Settlement Hearing , and directing the mailing to the Settlement Class of the Notice of Class Action Settlement.

3.22    "Preliminary Approval Date" means the date of entry of the Preliminary Approval

Order.

3.23    "Released Claims" means any and all claims of whatever nature, known or

unknown, that the Class Representatives and Settlement Proposed Class Members may have

against sanofi-aventis, its parent, subsidiaries and affiliated companies, and in the case of all

such entities, their respective past and present owners, representatives, officers, directors,

attorneys, agents, employees, insurers, predecessors, successors and assigns (collectively referred

to as the "Released Parties"), arising out of the same transactions, series of connected

transactions, occurrences or nucleus of operative facts that form the basis of the claims that were

or could have been asserted in the Civil Action including any and all claims asserted in the

original and subsequently amended complaints filed in the Civil Action.  This release does not

include or cover any actions or omissions occurring after the Final Approval Date as defined.

Specifically included in this release are any and all employment discrimination claims or benefits

claims arising out of the same transactions, series of connected transactions, occurrences or

nucleus of operative facts that form the basis of the claims that were or could have been asserted

in the Civil Action (including compensation, promotion, sexual harassment and retaliation claims

arising from any alleged conduct from 2004 through the date of Final Approval), including but

not limited to, claims of alleged employment discrimination or benefits claims under Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), 42 U.S.C. §

1981 ("Section 1981"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

("ADEA"), the Americans with Disabilities Act, 29 U.S.C. § 12101 et seq. ("ADA"), the New

York Human Rights Law, §§ 296 et al., the Employee Retirement Income Security Act of 1974,

29 U.S.C. §§ 1001, et seq. ("ERISA") (except for vested benefits otherwise entitled), and any

8

other federal, state, or local statutes, common law, or regulation. Furthermore, this Release includes any and all common law claims for fraud, duress, breach of contract, fraudulent inducement or any other state, local or federal claim arising from the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Civil Action. Furthermore, this Release includes all claims for monetary damages, injunctive, declaratory or equitable relief, and costs and attorneys' fees, whether arising under Title VII, Section 1981 or under any other federal, state, local or common laws or regulations arising out of the same transactions, series of connected transactions, occurrences or nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Civil Action.

3.24 "Released Parties" means sanofi-aventis, its parent, subsidiaries and affiliated companies, and in the case of all such entities, their respective past and present owners, representatives, officers, directors, attorneys, agents, employees, insurers, predecessors, successors and assigns.

3.25 "Settlement Agreement" or "Agreement" means this Agreement and all Exhibits attached to it.

3.26 "Settlement Class" or "Class" means the class that Plaintiffs seek to have certified for purposes of this Settlement Agreement which is defined above in Paragraph 3.3, who do not timely opt-out of the Settlement pursuant to the terms of the Preliminary Approval Order (together the "Settlement Proposed Class Members" or "Proposed Class Members" and individually each a "Proposed Settlement Class Member" or "Proposed Class Member").

**B.    Duration of the Settlement.** The programmatic relief in this Settlement Agreement is effective immediately upon the Effective Date and shall remain binding on the Parties and their agents and successors for a three-year period following the Effective Date.

**C.    Mutual Full Cooperation.** The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.

**D.    Persons Covered by this Settlement Agreement.**

3.27    **Definition of "Proposed Settlement Class," "Class" or "Proposed Class Members."** For purposes of this Settlement and Court approval of the Settlement Agreement, Plaintiffs seek certification of the following Proposed Settlement Class:

> All female sales force employees employed by sanofi-aventis in the United States for at least one day between May 12, 2005 to the Preliminary Approval Date, excluding individuals who held management level positions higher than District Sales Manager, excluding individuals who previously entered into individual releases as part of individual agreements with sanofi-aventis up to the Final Approval Date, and excluding individuals who file a timely request to opt out of the Settlement.

**E.    Jurisdiction and Venue.**

3.28    This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New Jersey, both in its procedural and substantive aspects. Any breach of contract claim concerning this Agreement shall be brought in the United States District Court for the Southern District of New York, and the Parties shall request that the Court assign the matter to Judge Koeltl. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

10

## IV. MONETARY RELIEF

### A. The Total Settlement Amount.

4.1    Defendant shall pay **Fifteen Million Three Hundred Sixty Thousand Dollars ($15,360,000.00)** to settle and satisfy the claims in the Civil Action ("Total Settlement Amount"). The Total Settlement Amount shall be divided as follows provided the Court finally approves the Settlement:

(i)    a total gross amount of $8,188,000.00 less applicable costs set forth below allocated for the payment of all individual monetary awards to the Proposed Settlement Class Members, described in more detail in Section V.A;

(ii)    a total gross amount of $535,000.00 allocated for service payments, including $375,000.00 allocated to the five (5) Named Plaintiffs and $160,000.00 allocated to Amy Johnson, Lucy Velez, Beth Green, and Patrice Sutherland as service payments if they agree to remain in the class settlement (collectively the "Service Payments"), described in more detail in Paragraph 7.1;

(iii)    a total gross amount of $2,047,000.00 to conduct a Pay Equity Analysis by an independent Labor Economist/Statistician and to fund pay equity adjustments for current employees in accordance with the analysis. Such work is described in Sections IV.C and VI.F; and

(iv)    a total gross amount of $4,590,000.00 allocated to pay Class Counsel's attorneys' fees, which include attorneys' fees in connection with seeking Court approval of the Settlement, overseeing the claims process, and monitoring the Settlement Agreement, plus reasonable and verified costs, described in more detail in Paragraph 7.2.

4.2    In addition to the Total Settlement Amount, sanofi-aventis shall pay the employer's share of applicable employment taxes or contributions as described in Paragraphs 5.1 and 5.6.

4.3    In additional to the Total Settlement Amount, sanofi-aventis shall pay up to $150,000.00 in administrative expenses of the Settlement Agreement as described in Section IV.D.

**B.    The Class Monetary Awards Settlement Fund.**

4.4    No later than thirty (30) days after the Final Approval Date, sanofi-aventis shall provide, by wire transfer, to the Claims Administrator Thirteen Million Three Hundred Thirteen Thousand Dollars ($13,313,000.00) (the "Class Monetary Awards Settlement Fund"). The Class Monetary Awards Settlement Fund is calculated based upon the Total Settlement Amount described in Paragraph 4.1, above ($15,360,000.00) minus the amount dedicated to the Pay Equity Settlement Fund described in Paragraph 4.10, below ($2,047,000.00).

4.5    The Class Monetary Awards Settlement Fund will be placed in an interest bearing account (the "Class Settlement Account") approved by Class Counsel with a unique Tax Payer Identification Number. Any interest accrued prior to the distribution of any monetary awards will be added to the Total Settlement Amount described in paragraph 4.1.

4.6    The Class Settlement Account will constitute a qualified settlement fund pursuant to Internal Revenue Code Section 1.468B-1. Upon the opening of this account, sanofi-aventis shall execute an election statement provided by the Claims Administrator which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start date of the Qualified Settlement Fund. The Qualified Settlement Fund will be created, managed and disbursed by the Claims Administrator under the supervision of Class Counsel and Counsel for

sanofi-aventis. The Claims Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund Account. Sanofi-aventis will have no responsibilities or liabilities with respect to the administration of the Settlement Fund Account, including any distribution therefrom and the reporting for such distribution.

4.7     Upon wiring the Class Monetary Awards Settlement Fund amount, subject to the requirements of Paragraph 4.2. 4.3, 4.10, 5.1, 5.6 and Section IV.D, sanofi-aventis will have no further monetary obligation pursuant to this Settlement and sanofi-aventis shall have no further responsibility or obligation to make any additional payments pursuant to this Settlement including with respect to attorneys' fees and costs.

4.8     The Claims Administrator shall have the obligation to return the entire Qualified Settlement Fund (including all income and/or interest generated by the Qualified Settlement Fund) to sanofi-aventis within five (5) business days in the event of revocation of this Settlement, or in the event that this Settlement Agreement is modified or reversed on appeal or is otherwise rendered null and void for any reason.

4.9     The Claims Administrator shall distribute the Class Monetary Awards Settlement Fund (including interest generated by the Qualified Settlement Fund) pursuant to the provisions described below, and on the time schedule described herein and pursuant to the orders of the Court.

C.     **The Pay Equity Settlement Fund.**

4.10     Sanofi-aventis shall reserve a total gross amount of Two Million Forty Seven Thousand Dollars ($2,047,000.00) (Pay Equity Settlement Fund) to be allocated within a reasonable period of time, but no later than December 31, 2010, as base pay adjustments pursuant to the Pay Equity Analysis described in Section VI.F.

4.11    To the extent recommended by the Labor Economist/Statistician conducting the Pay Equity Analysis as described in Section VI.F, sanofi-aventis shall utilize the full Pay Equity Settlement Fund to make upward base pay adjustments for Proposed Class Members who are current sales force employees at sanofi-aventis on the allocation date.

**D.    Administrative Expenses.**

4.12    Sanofi-aventis shall pay administrative expenses of this Settlement Agreement, up to a maximum of $150,000, including fees and costs of the Claims Administrator and the costs of the Notice. Any additional administrative expenses shall be paid from the Class Monetary Awards Settlement Fund, including any expenses necessary to administer the Claim Form Discrimination Survey Component of this settlement set forth in Paragraph 5.1(ii).

**V.    ALLOCATION AND DISTRIBUTION OF INDIVIDUAL MONETARY AWARDS**

**A.    Allocation Formula.**

5.1    Proposed Class Members will be eligible to receive individual monetary awards based upon a formula (the "Allocation Formula") which will have two components: (1) a Base Pay Disparity Regression Component developed by Lead Class Counsel's experts, and (2) a Claim Form Discrimination Survey Component for Proposed Class Members who submit a timely and complete Claim Form as set forth in Paragraph 5.1(ii).  Sixty percent of the total $8,188,000.00 ($4,912,800.00), less applicable costs as set forth below, will be allocated to the Base Pay Regression Component, and forty percent of the total $8,188,000.00 ($3,275,200.00), less applicable costs as set forth below, will be allocated to the Claim Form Discrimination Survey Component.

(i)    **Base Pay Disparity Regression Component.** All Proposed Class Members, including Named Plaintiffs, will receive a monetary award based on a proportionate

14

share of the Base Pay Disparity Regression Component using the results of a regression analysis conducted by Lead Class Counsel's expert to determine the proportionate share. The regression analyses shall include at least the following variables: a) gender; b) the length of tenure at sanofi-aventis; c) job grade; d) job level; e) business unit and subsection; f) experience, g) education, and h) full time v. part time status (including leave status). Regardless of the regression results, no Proposed Class Member shall receive less than two hundred dollars ($200.00). No later than thirty (30) days after the Effective Date, the Claims Administrator will pay the portion of the Class Monetary Awards Settlement Fund allocated for individual Proposed Class Member monetary awards through the Base Pay Disparity Regression Component. Prior to that date, the Claims Administrator will provide reasonable notice to sanofi-aventis of sanofi-aventis' required share of taxes or contributions for each payment sufficient to prepare a wire transfer.

      (ii)    **Claim Form Discrimination Survey Component.**  In addition to the Base Pay Disparity Regression Component, Proposed Class Members are eligible to receive a monetary award from the Claim Form Discrimination Survey Component of the Allocation Formula. Each Proposed Class Member who seeks to receive such award must complete the Claim Form and supply information related to her claims. Thereafter, an Independent Claim Expert who is jointly selected by the parties shall review the Claim Forms and any evidence submitted in connection with the Claim Forms and allocate a certain number of points to Claimants through application of the following point allocation plan:

      a)      Claimants will be eligible to receive 15 points if she indicates that she believes that she was discriminated against with respect to her sex when she applied for a promotion. To receive the full points however, an individual will have to provide information or documentation supporting a claim for promotion discrimination;

b)      Claimants will be eligible to receive 10 points if she indicates that she believes that she was discriminated against with respect to her sex in terms of compensation. To receive the full points however, an individual will have to provide information or documentation supporting a claim for compensation discrimination;

c)      Claimants will be eligible to receive 20 points if she indicates that she was subject to sexual harassment at sanofi-aventis. To receive the full points however, an individual will have to provide information or documentation supporting a claim for sexual harassment;

d)      Claimants will be eligible to receive 20 points if she claims that she was subject to retaliation by sanofi-aventis after she made a complaint of sex discrimination. To receive the full points however, an individual will have to provide information or documentation supporting a claim for retaliation;

e)      Claimant will be eligible to receive up to 85 points if she claims that she was treated by a medical provider (e.g., doctor, psychologist, psychiatrist, counselor, etc.) concerning the emotional distress that she experienced as a result of sexually discriminatory events that allegedly took place at sanofi-aventis. To receive the full points however, an individual will have to provide documentation supporting a claim for emotional harm caused by alleged discrimination.

Following the finalization of the award of points to Claimants, the Independent Claim Expert shall total the points applicable to all eligible Proposed Class Members, total the number of Claims Forms received, and determine each eligible Proposed Class Member's proportionate share of the total points and, allocate each eligible Proposed Class Member's share of the Claim Form Discrimination Survey Component based on her individual point total. No Proposed Class

Member may receive an award under the Claim Form Discrimination Survey Component of the Agreement that is higher than the limitation on compensatory and punitive damages provided for by 42 U.S.C. § 1981a(b)(3)(D). Unless the Independent Claims Expert or a Proposed Class Member requests assistance from Class Counsel or Counsel for sanofi-aventis, Class Counsel or Counsel for sanofi-aventis shall not have access to any Claimant's Claim Form, or any evidence submitted in connection with the Claim Form. Upon completion of his/her work, the Independent Claims Expert shall provide Lead Counsel and Counsel for sanofi-aventis a list of the individual point allocations, the costs associated with his/her work and the final proposed individual award amounts. This list shall be treated as Attorneys Eyes Only, however, it may be distributed to individuals within sanofi-aventis' accounting and/or financial departments if counsel for sanofi-aventis determines that it is necessary for sanofi-aventis to obtain this information for legal, financial, or accounting purposes.

In addition, any Proposed Class Member that receives a payment under the Claim Form Discrimination Component of the Agreement agrees to be bound by a confidentiality provision separate and apart from any other confidentiality provision in this agreement. Specifically, she shall agree and promise that she has not communicated or disclosed, and will not hereafter communicate or disclose in the future, the sum of any payment made to her under this Agreement to any persons other than members of her immediate family, her present attorneys, accountants and/or tax or financial consultants, state and federal tax authorities or other persons as may be required by law provided, however, that any such person or entity to whom disclosure is made shall be instructed in advance by each Claimant that the information is strictly confidential pursuant to this Agreement. For all other purposes, Claimant shall indicate only that her lawsuit has been "resolved."

If the parties cannot agree on the Independent Claim Expert, then within five (5) days of such

impasse, each party will submit one proposed name to Eric Green, who will then have final

authority to select which Independent Claim Expert to use from the two names suggested by the

parties or Eric Green may select a third-part Independent Claim Expert not suggested by the

parties.

      5.2     It is the intention of the Parties to completely distribute the funds in the Base Pay

Disparity Regression Component and the Claim Form Discrimination Survey Component of the

Class Monetary Awards Settlement Fund.  In the event, however, the $8,188,000.00, less

applicable costs set forth herein, is not completely distributed for any reason, any remaining

funds shall revert back to be distributed to Proposed Class Members through the Pay Equity

Analysis and Salary Adjustments described in Section IV.C and VI.F.

**B.**    **Independent Claim Expert's Authority to Determine Monetary Awards for Claim Form Discrimination Survey Component.**

      5.3     Within three (3) months after the date specified for receipt of all Claim Forms in

the Preliminary Approval Order, the Independent Claim Expert shall render a determination as to

the monetary awards, if any, that should be paid to each eligible Proposed Class Member from

the Claim Form Discrimination Survey Component provided the Proposed Class Member

submitted a complete and timely Claim Form, and provide such monetary awards information to

the Claims Administrator.  The three-month period can be extended for up to two additional

months if agreed by the parties.  All costs associated with the work of the Independent Claim

Expert including reviewing all submissions, allocating points and determining final awards shall

be deducted from the amount allocated for the Claim Form Discrimination Survey Component

prior to the final awards being determined.

5.4. The Claims Administrator shall send the eligible Proposed Class Members their award payments from the Claim Form Discrimination Survey Component no later than thirty (30) days after the Independent Claim Expert submits the monetary awards information to the Claims Administrator.

5.5 The Claims Administrator shall maintain the distribution plan and allocation list for a period of three years.

**C.    Allocation of Monetary Awards.**

5.6 Monetary awards payable to Proposed Class Members and Class Representatives from the Base Pay Disparity Regression Component will be allocated in settlement of their claims for back pay or lost wages subject to all applicable tax withholdings, and amounts from the Claim Form Survey Component and/or Service Payments shall not be treated as lost wages and therefore will be subject to an IRS 1099.

5.7 Except for base pay adjustments made pursuant to the Pay Equity Analysis of this Agreement, payments made under this Agreement are not intended to and will not: (1) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; or (2) be considered to apply to, or be applied for purposes of, Defendant's bonus, executive compensation, pension, any 401(k) and/or other retirement plans or similar programs. Except for base pay adjustments made pursuant to the Pay Equity Analysis of this Agreement, Defendant retains the right, if necessary, to modify the language of its benefit plans and pension, bonus and other programs, if necessary, to make clear that any amounts paid pursuant to this Agreement are not for hours worked, hours paid or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual or any other purpose.

**D.**    **Settlement Checks and Release.**

5.8    The face of each check sent to Proposed Settlement Class Members shall clearly state that the check must be cashed within one year.  All payments distributed by the Claims Administrator must be accompanied by a cover letter stating words in bold to the effect that "the check must be cashed within one year or it will become void."  The back of each check will contain a legend stating:  "By negotiating this check and accepting payment I agree that I have waived and released the Released Parties from all Released Claims as defined in the Settlement Agreement and in the Notice in this matter. This Release will become effective on the Effective Date.

**VI.**    **PROGRAMMATIC RELIEF**

**A.**    **Commitment to Equal Employment Opportunities for Women.**

6.1    Sanofi-aventis will enforce the following non-discrimination, anti-harassment, and anti-retaliation policies to ensure sanofi-aventis' female employees enjoy equal terms and conditions of employment comparable to their male counterparts.

(i)    sanofi-aventis will prohibit discrimination on the basis of gender in base salary and other compensation.

(ii)    sanofi-aventis will prohibit discrimination on the basis of gender in promotions and other advancement opportunities.

(iii)    sanofi-aventis will prohibit discrimination on the basis of gender in management development training programs and other development opportunities.

(iv)    sanofi-aventis will prohibit discrimination on the basis of marital status, familial status, or caregiving responsibilities.

(v)    sanofi-aventis will prohibit harassment on the basis of gender.

(vi)    sanofi-aventis will prohibit retaliation against any female employee for (1) reporting gender discrimination or harassment; (2) testifying, furnishing information or participating in any investigation, proceeding, or hearing, whether in connection with this lawsuit or any other complaint of gender discrimination or harassment at sanofi-aventis that may be asserted in the future; (3) filing a lawsuit or complaint alleging gender discrimination or harassment; (4) refusing to participate in gender discrimination, or (5) participating in this Civil Action or this Settlement.

**B.    Communication of Commitment to Equal Employment Opportunities for Women.**

6.2    Within one year of the Final Approval Date, sanofi-aventis shall provide to all employees a written or electronic communication of sanofi-aventis' commitment to equal employment opportunities, together with a hard or electronic copy of its non-discrimination, anti-harassment and anti-retaliation policies. The communication shall be issued by sanofi-aventis' CEO.

6.3    Sanofi-aventis shall distribute its non-discrimination, anti-harassment and anti-retaliation policies to all employees upon hire, promotion to a management position, and annually, either electronically or in hard copy. Employees shall be required to submit an acknowledgment of receipt, either electronically or in hard copy. Sanofi-aventis will also provide its non-discrimination, anti-harassment and anti-retaliation policies to new managers during management training.

21

6.4    Sanofi-aventis shall require all management-level employees at the District Sales Manager level or above to attend mandatory trainings on its non-discrimination, anti-harassment and anti-retaliation policies upon hire and promotion to management. All management-level employees at the level of District Sales Manager and above shall attend such mandatory trainings annually.

C.    **Complaint Process, Training and Monitoring.**

6.5    Sanofi-aventis' complaint process shall be communicated in writing or electronic communication to all employees upon hire and annually thereafter. New hires shall be required to submit an acknowledgment of receipt of this communication.

6.6    The Human Resources staff that is in charge of conducting investigations of alleged violations of its Equal Employment Opportunities Policy will retain a repository of documents related to all investigations that it conducts regarding complaints of alleged violations of its Equal Employment Opportunities Policy for the term of the Settlement Agreement.

6.7    Sanofi-aventis will provide its Human Resources staff with appropriate training regarding compliance with state, federal, and local EEO laws; sanofi-aventis' anti-discrimination and harassment policies and this Settlement Agreement.

6.8    Sanofi-aventis will provide its Human Resources staff responsible for conducting investigations of alleged violations of its Equal Employment Opportunities Policy with appropriate training regarding best practices for complaint investigation and resolution.

6.9    No later than six months after the Final Approval Date, sanofi-aventis will retain a consultant at its own expense with the approval of Lead Counsel (who shall first review the qualifications of this individual, and who agrees that so long as the individual retained by sanofi-aventis is reasonably qualified, it will not unreasonably withhold or delay consent) to review its

complaint and investigation procedures and to make recommendations regarding enhancements of those procedures. Sanofi-aventis will consider any recommendations and will make good faith enhancements to its procedures consistent with the recommendations.

**D.    Management/Mobility.**

6.10    All available district manager positions will be posted on sanofi-aventis' Internal Career Center for a minimum of five days, except in the case of rotational programs, developmental programs, and/or exigent business circumstances. Minimum requirements for qualification for a management position will be available on the Internal Career Center.

6.11    Sanofi-aventis shall provide all management-level employees with diversity training no less than every year. The format of such training may vary from jurisdiction to jurisdiction depending on the relevant legal requirements. However, all managers shall, at a minimum, be required to complete an interactive, customized, e-learning training program. The positions to be trained are: District Sales Managers, Regional Sales Directors, Area Vice-Presidents, and Vice-Presidents.

6.12    The Industrial Psychologist retained pursuant to paragraph 6.9 above shall also evaluate the feasibility of permitting applicants for management positions to apply anonymously when a position is posted on sanofi-aventis' Internal Career Center and shall make recommendations regarding such anonymous application procedures. Sanofi-aventis will consider any recommendations and will make good faith enhancements to its procedures consistent with the recommendations.

**E.    Development Opportunities.**

6.13    Sanofi-aventis shall continue to support its WISE organization, which currently offers mentoring and training development programs to female employees.

F.    **Pay Equity Review and Salary Adjustments.**

6.14    Sanofi-aventis shall set aside $2,047,000.00 pursuant to Paragraph 4.10, to conduct a Pay Equity Analysis of existing base pay compensation for all current sales force employees based on their status as of June 16, 2009 and, based on the results of the analysis, the Labor Economist/Statistician shall recommend appropriate award base pay adjustments for current female sales force employees, with the exception of management level employees who hold titles other than District Sales Manager.

6.15    Sanofi-aventis agrees to retain a Labor Economist/Statistician with the approval of Lead Counsel (who shall first review the qualifications of this individual, and who agrees that so long as the individual retained by sanofi-aventis is reasonably qualified, it will not unreasonably withhold or delay consent) to conduct a pay equity analysis of existing compensation and recommend any pay adjustments for current female sales force employees. Lead Class Counsel shall have an opportunity to meet with the Labor Economist/Statistician and review and discuss his/her proposed methodology for the Pay Equity Analysis prior to the Labor Economist/Statistician's beginning the analysis. Lead Class Counsel shall also have the opportunity to make recommendations to the Labor Economist/Statistician about the methodology for the Pay Equity Analysis. sanofi-aventis agrees not to interfere with the Labor Economist/Statistician's consideration of these recommendations.

6.16    Consistent with the principles and purposes of this Agreement, sanofi-aventis will implement the recommendations of the Labor Economist/Statistician regarding base pay adjustments and shall use the full amount of the Pay Equity Settlement Fund for upward pay adjustments.

24

G.    **Expert Access to Information.**

6.17    Sanofi-aventis agrees that, subject to an appropriate confidentiality agreement, sanofi-aventis will provide the selected Labor Economist/Statistician with access to all records, documents, compensation data (including W-2 data) and other sources of information for all sales force employees during the Class Period, including a copy of compensation policies and job descriptions, necessary or appropriate to fulfill his/her responsibilities described in this Agreement.

H.    **Internal Compliance Panel.**

6.18    Within thirty (30) days of the Final Approval Date , sanofi-aventis shall establish an Internal Compliance Panel to ensure compliance with this Agreement. The Internal Compliance Panel shall be comprised of a representative from sanofi-aventis' Human Resources Department, Legal Department, and Compliance Department at a Senior Director band level or higher. The Internal Compliance Panel shall meet semi-annually, or more frequently if necessary, to review progress on the status of implementing this Agreement and shall provide an annual progress report to Lead Class Counsel on compliance with this Agreement. The Internal Compliance Panel shall be charged with responsibility for ensuring that sanofi-aventis complies with the terms of this Agreement.

I.    **Compliance.**

6.19    If Lead Class Counsel believes sanofi-aventis has not complied with the terms of this Agreement, then Lead Counsel and sanofi-aventis shall meet and confer regarding Lead Class Counsel's issues with sanofi-aventis' compliance.  If the Parties are unable to resolve the issues through the meet and confer, Lead Class Counsel shall have the right to contact Eric

Green of Resolutions LLC to seek a resolution of the compliance issue. The mediator shall meet with sanofi-aventis and Lead Class Counsel to resolve the dispute. Both Parties will split the cost of the mediator on an equal basis. If Mr. Green determines that either party had a good faith basis for initiating this process, he may, at his discretion, apportion a different allocation of costs associated with the use of his services.

### VII. ATTORNEYS' FEES, LITIGATION COSTS, CLAIMS ADMINISTRATION COSTS, AND SERVICE PAYMENTS

7.1     As set forth above, subject to Court approval, the Claims Administrator will pay, from the Settlement Fund: (1) each of the five Class Representatives (Karen Bellifemine, Amy Zeoli, Jennifer Storm, Nancy Beaney and Michelle Popa), a Court-approved Service Award of up to the maximum gross amount of seventy five thousand dollars ($75,000), provided they do not opt-out of the settlement; and (2) pay Court-approved Service Awards of up to the maximum gross amount of twenty-five thousand dollars ($25,000.00) to Amy Johnson, fifty thousand dollars ($50,000.00) to Lucy Velez, sixty thousand dollars ($60,000.00) to Beth Green, and twenty-five thousand dollars ($25,000.00) to Patrice Sutherland, for their services on behalf of the class, as *de facto* class representatives provided that they do not opt-out of the settlement. The Service Awards will be as determined and approved by the Court. The Claims Administrator will pay the aforementioned Service Payments within thirty (30) days after the Effective Date.

7.2     Pursuant to Fed. R. Civ. P. 23(h), Class Counsel shall make a motion for reasonable attorneys' fees and costs incurred by Class Counsel, including the fees and costs in connection with seeking Court approval of the Settlement, the claims process and monitoring the Settlement Agreement pursuant to the amount described in Paragraph 4.1(iv). Within thirty (30)

days after the Effective Date, the Claims Administrator will pay from the Class Monetary

Awards Settlement Fund any Class Counsel attorneys' fees up to a maximum of $4,590,000.00,

plus reasonable and verified costs, or such lesser amount ordered by the Court. Prior to the

payment of attorneys' fees and costs, Class Counsel will provide the Claims Administrator with

Tax Payer Identification Numbers for Class Counsel and executed Form W-9s. Form 1099s

shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel

agrees that any allocation of fees between or among Class Counsel shall be the sole

responsibility of Class Counsel.

7.3    At least five (5) business days prior to the Settlement Hearing, the Claims

Administrator shall provide the Court and Counsel for the Parties with a statement detailing its

costs of administration. The Parties and the Claims Administrator agree to cooperate in the

settlement administration process and to make all reasonable efforts to control and minimize the

costs and expenses incurred in the administration of the settlement.

## VIII.  NOTICE, CLAIMS PROCESS, OBJECTIONS, EXCLUSIONS AND SETTLEMENT HEARING

### A.    Claims Administrator's Duties.

8.1    The Claims Administrator shall (1) mail the Notice of Class Action Settlement

(the "Notice") and Claim Forms to Proposed Class Members; (2) receive Claim Forms and

forward them to the Independent Claim Expert to evaluate claims and determine awards; (3) seek

additional information from Claimants or Lead Class Counsel, when appropriate; (4) respond to

questions from Proposed Class Members; (5) receive awards information from the Independent

Claim Expert and distribute awards to Proposed Class Members; (6) maintain a toll-free number

for communicating with Proposed Class Members; (7) mail checks to Proposed Class Members

and Class Counsel; and (8) any other duties necessary to carry out its responsibilities described in this Agreement.

**B.    Notice and Claim Forms.**

8.2    Within twenty (20) business days of the Preliminary Approval Date, Defendant shall provide to the Claims Administrator a list of all Proposed Class Members, including name, employee ID, job title, last known address and telephone number. Defendant will provide this information in a format reasonably acceptable to the Claims Administrator. The Claims Administrator will maintain this list in the strictest confidence and shall not disclose it to anyone except Class Counsel, who may use it only for purposes of administering this Settlement.

8.3    No later than twenty (20) business days after the date that Defendant provides the list of all Proposed Class Members described in Paragraph 8.2, the Claims Administrator shall mail the Notice in substantively the form attached hereto as Exhibit A, and as approved by the Court, to Proposed Class Members, by United States first class mail, postage prepaid. The Parties intend to provide actual notice to each Proposed Class Member, to the extent practicable. The Claims Administrator shall mail a Claim Form to each Proposed Class Member at the same time the Notice is sent.

8.4    In order to provide the best notice practicable, the Claims Administrator will do the following before mailing the Notice and Claim Form: (1) run the list of all Proposed Class Members through the United States Postal Service's National Change of Address database ("NCOA"); and (2) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

8.5     If envelopes from the mailing of the Notice and Claim Form are returned with forwarding addresses, the Claims Administrator will re-mail the Notice and Claim Form to the new address within three (3) business days.

8.6     Class Counsel shall provide the Court, at least five (5) calendar days prior to the Settlement Hearing, a declaration by the Claims Administrator of due diligence and proof of mailing with regard to the mailing of the Notice of Class Action Settlement and Claim Form to Proposed Class Members.

8.7     In the event that a Notice of Class Action Settlement and Claim Form are returned to the Claims Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current address of the particular Proposed Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Notice and Claim Form within three (3) business days of receiving the newly ascertained address; if no updated address is obtained for that Proposed Class Member, the Notice of Class Action Settlement and Claim Form shall be sent again to the Proposed Class Member's last known address.  In either event, the Notice of Class Action Settlement and Claim Form shall be deemed received once it is mailed for the second time unless the Proposed Class Member can demonstrate good reason why she did not receive it.

8.8     With respect to envelopes marked "Return to Sender," the Claims Administrator may also call any identified last-known telephone numbers (and telephone numbers updated through public and proprietary databases) of Proposed Class Members to obtain their current addresses.

8.9     The Claims Administrator shall provide to Counsel for sanofi-aventis and Class Counsel, at least ten (10) business days prior to the Settlement Hearing, a list of Proposed Class Members to who notices were returned as undeliverable and for whom efforts to obtain an alternative address failed.

**C.     Submission of Claim Forms.**

8.10     Proposed Class Members who seek recovery of a monetary award from the Claim Form Discrimination Survey Component of the Class Monetary Awards Settlement Fund must complete a Claim Form and file the completed form with the Claims Administrator by the claim filing deadline described in the Preliminary Approval Order. The Claim Form must be postmarked on or before such date in the Order to be considered timely. All Claim Forms must be signed under penalty of perjury to be considered. Failure to file a timely Claim Form, for any reason whatsoever, shall bar the Proposed Class Member from receiving a monetary award from the Claim Form Discrimination Survey Component.

8.11     Proposed Class Members who file a Claim Form must notify the Claims Administrator of any change of address. A failure to notify the Claims Administrator of a change of address may result in the forfeiture of a monetary award. The Claims Administrator shall be available through the toll- free line to respond to requests from Proposed Class Members for assistance in completing and filing Claim Forms. Lead Class Counsel shall also be available to consult with and provide assistance to Proposed Class Members who request assistance in completing their Claim Forms.

**D.     Determining Eligibility.**

8.12     The Claims Administrator shall make the determination as to whether a Claim Form is complete.  If it is not complete, the Claims Administrator shall request additional

information from the claimant, if it appears that such additional information would complete the Claim Form. Such requests for information may be in writing or by telephone but the Claims Administrator shall document all requests for additional information in writing for the file, including by specifying the information that was requested and the date of the request. Claimants shall have twenty (20) days to respond to any requests for additional information. Any additional information provided shall be considered part of the original Claim Form and will relate back to the original filing date. All issues resolving any late-filed claims or late-filed responses to a request for additional information shall be resolved by the Court at the Final Fairness Hearing.

8.13    No later than five (5) business days after determining a Claim Form is complete, the Claims Administrator shall forward the Claim Form and any supporting evidence submitted with the Claim Form to the Independent Claim Expert.

**E.    Objections.**

8.14    Proposed Class Member objections to this Settlement Agreement must be submitted in writing, and must include a detailed description of the basis of the objection.

8.15    Objections must be filed with the Court, with copies served on the Claims Administrator, Lead Class Counsel and Counsel for sanofi-aventis, within thirty-five (35) days after the Notice is mailed by the Claims Administrator. The postmark date of the objection shall be the exclusive means for determining that an objection is timely. Proposed Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

8.16    No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having filed and served her objection(s) in writing within thirty-five (35) days after the Notice was mailed to Proposed Class Members. Any lawyer representing a Proposed Class Member for the purpose of making objections must also file a Notice of Appearance with the Court by the objection deadline and must also serve copies by mail to Counsel for the Parties.

**F.    Exclusions.**

8.17    Proposed Class Members may exclude themselves, or opt-out, of the Settlement. Any Proposed Class Member who wants to opt-out of the Settlement Class may file a timely request for exclusion pursuant to the provisions described in the Notice of Class Action Settlement. Such written request for exclusion must contain the name, address and telephone number of the person requesting exclusion. The opt-out must be personally signed by the Proposed Class Member who seeks to opt-out. No opt-out request may be made on behalf of a group of Proposed Class Members. The request for exclusion must contain the statements described in the Notice of Class Action Settlement, and must be sent by mail or courier to the Claims Administrator so that it is actually postmarked (or received, if by courier) within forty-five (45) days after Notice was mailed by the Claims Administrator. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. Any person who timely submits such a request for exclusion shall be barred from participation in the Settlement, and shall receive no benefit from the Settlement. The Claims Administrator shall provide Lead Class Counsel and Counsel for sanofi-aventis with a copy of all opt-out statements on a weekly basis.

8.18    Lead Class Counsel shall file with the Court all timely opt-out statements. The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt-out are not entitled to any monetary award under this Settlement Agreement.

### G.    Settlement Hearing.

8.19    Upon Preliminary Approval, a briefing schedule and Settlement Hearing date will be set at the Court's convenience in the Preliminary Approval Order.

## IX.    RELEASES

9.1    Upon the negotiation of a settlement check or upon the Effective Date whether or not a settlement check has been negotiated, whichever is earlier, each member of the Settlement Class shall be deemed to, and shall have, released and discharged all Released Parties with respect to all Released Claims subject to Section V.D.

9.2    Every Proposed Class Member, as defined above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

9.3    The Parties and Proposed Class Members acknowledge that the covenants and promises made by sanofi-aventis herein constitute adequate consideration in exchange for the Released Claims as defined in Paragraph 3.23 above.

9.4    Nothing in this Settlement Agreement shall be construed to bar any claims of Proposed Class Members or the Class Representatives based on or arising out of events occurring after the date of the Final Approval by the Court of the Settlement Agreement.

I.    **SANOFI-AVENTIS'S RIGHT TO WITHDRAW OR MODIFY THE AGREEMENT**

10.1    If a total of 25 or more Proposed Class Members submit timely and complete requests for exclusion, sanofi-aventis shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this Section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Lead Class Counsel. If sanofi-aventis does withdraw in conformity with the provisions and time limits of this Section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether sanofi-aventis is entitled to withdraw from the Agreement and has validly done so.

10.2    If any of the Class Representatives submits a timely and complete request for exclusion, sanofi-aventis shall have the absolute right, in its sole discretion and notwithstanding any other provisions of this Agreement, but subject to all the provisions and time limits of this section, to withdraw in writing from this Agreement, or to modify this Agreement through further negotiations with Class Counsel. If sanofi-aventis does withdraw in conformity with the provisions and time limits of this section, the Agreement will be null and void for all purposes and may not be used or introduced in further litigation except to determine whether sanofi-aventis is entitled to withdraw from the Agreement and has validly done so. Sanofi-aventis shall have thirty (30) calendar days after the expiration of all Proposed Class Members' deadlines in paragraph 10.1 above to withdraw from (or modify through negotiation) this Agreement on the basis that a Class Representative has submitted a timely and complete request for exclusion.

10.3    The Claims Administrator shall each calendar week notify Counsel for sanofi-aventis and Lead Class Counsel by fax or email of the number of individuals who have to that

date submitted timely and complete requests for exclusion and whether any of them are Class Representatives, and at the same time shall send to said Counsel by fax, email or by overnight delivery copies of all the timely and complete requests for exclusion which Class Counsel has received. Sanofi-aventis shall have thirty (30) days after the expiration of all Proposed Class Members' deadlines in Paragraph 10.1 above to withdraw from (or modify through negotiation) this Agreement on the basis that a total of 25 Proposed Class Members have submitted timely and complete requests for exclusion.

XI.    **DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL**

11.1    Promptly upon execution of this Agreement, but by no later than forty-five (45) days thereafter, Class Counsel shall apply to the Court for the entry of an order (the "Preliminary Approval Order"):

(i)    Scheduling a Settlement Hearing as soon as practicable on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the class;

(ii)    Approving as to form and content the proposed Notice of Class Action Settlement;

(iii)    Approving as to form and content the proposed Claim Form;

(iv)    Directing the mailing of the Notice and Claim Form by first class mail to the Proposed Class Members;

(v)    Preliminarily approving the Agreement, as well as the payment of attorneys' fees, costs, and Service Payments described in this Agreement; and

(vi)    Certifying the Settlement Class.

11.2    In moving for the entry of the Preliminary Approval Order, Class Counsel will submit to the Court for its approval this Settlement Agreement and attachments, and supporting papers, which shall described the terms of this settlement and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement Agreement.

11.3    Within ten (10) business days following the filing of this Agreement with the Court, sanofi-aventis shall serve upon the appropriate State Official in which any Proposed Class Member resides, as determined by sanofi-aventis' records, a notice of the proposed Settlement in compliance with the requirements of CAFA, 28 U.S.C. §1715. A sample of the CAFA Notice is attached hereto as Exhibit B.

11.4    In computing any period of time prescribed or allowed by this settlement Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a).

## XII.    DUTIES OF THE PARTIES FOLLOWING FINAL COURT APPROVAL

12.1    In connection with the Final Approval by the Court of the Agreement, Class Counsel and Counsel for Defendant will submit a proposed final order and judgment:

(i)    Granting final approval to the Agreement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

(ii)    Dismissing the Civil Action with prejudice and permanently barring all members of the Settlement Class including the Class Representatives from prosecuting against any Released Parties any of the Released Claims; and

(iii)    All materials containing Confidential Information or Highly Confidential Information pursuant to the Confidentiality Agreement entered in the Civil Action shall be

returned to the producing party or destroyed by the party to whom those materials were produced within one-hundred eighty (180) days after the Effective Date, with the exception that the Parties may retain copies of their work product; copies of all filed documents (whether or not filed under seal or submitted to the court without being officially filed); and materials necessary to oversee compliance with this Agreement, except that all documents and materials designated Highly Confidential shall be returned to sanofi-aventis or sanofi-aventis' Counsel, who shall retain and maintain that information in the form in which it is returned during the term of this Settlement Agreement.

## XIII.  PARTIES' AUTHORITY

13.1    The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties and the Proposed Settlement Class Members to the terms and conditions hereof.

13.2    All of the Parties acknowledge that through this Settlement Agreement and its attachments, they and the Proposed Settlement Class Members are being advised that they may consult an attorney regarding their participation in this Agreement, and the Parties acknowledge that they in fact have been represented by competent, experienced Counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of Counsel who have jointly prepared this Agreement.

13.3    All of the Parties and Proposed Settlement Class Members acknowledge that they are participating voluntarily and knowingly in exchange for the consideration described herein. The Parties and Proposed Settlement Class Members further acknowledge that they were provided with a reasonable period of time within which to consider this Agreement.

## XIV.  NOTICES

14.1    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To the Class Representatives or to any Proposed Settlement Class Member:

SANFORD WITTELS & HEISLER, LLP

Steven L. Wittels, Esq.

1350 Avenue of the Americas, Suite 3100

New York, NY 10019


To the Defendant:

MORGAN, LEWIS & BOCKIUS LLP

Michael S. Burkhardt, Esq.

1701 Market Street

Philadelphia, PA 19103-2921


## XV.  MODIFICATION

15.1    This Agreement and its attachments may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

## XVI.  ENTIRE AGREEMENT

16.1    This Agreement and its attachments constitute the entire agreement between the Parties and Proposed Settlement Class Members concerning the subject matter hereof.  No

extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this

Agreement. In the event of any conflict between this Agreement and any other Settlement-

related document, the Parties and Proposed Settlement Class Members intend that this

Agreement shall be controlling.

## XVII. COUNTERPARTS

17.1    This Agreement may be executed in counterparts, and when each party has signed

and delivered at least one such counterpart, each counterpart shall be deemed an original, and,

when taken together with other signed counterparts, shall constitute one Agreement, which shall

be binding upon and effective as to all Parties and Proposed Settlement Class Members.

## XVIII. PUBLIC COMMENT

18.1    Other than necessary disclosures made to the Court, the content of the Parties'

settlement negotiations shall be held confidential by Counsel for sanofi-aventis, sanofi-aventis,

Class Counsel and the Class Representatives. Counsel for sanofi-aventis, sanofi-aventis, Class

Counsel, and the Class Representatives shall not disclose any information to any third party

about the content of the settlement negotiations, subject to the following exceptions: (a) Class

Counsel and the Class Representatives may communicate about the content of the settlement

negotiations with Proposed Settlement Class Members for purposes of implementing,

administering and enforcing the Settlement as provide herein, and Class Counsel may respond to

inquiries they respectively receive from Proposed Settlement Class Members; (b) sanofi-aventis

may communicate with those persons, including sanofi-aventis employees, necessary for the

administration, implementation, and enforcement of the Settlement, and necessary for any

financial disclosures, and may inform its employees of the Settlement. Class Counsel agrees to

use the contact information for Proposed Settlement Class Members that is provided to it by the

Claims Administrator and Counsel for sanofi-aventis solely for purposes of communicating regarding this action and implementing this Agreement and for no other purpose, at any time, or for any reason.

## XIX.  VOIDING THE AGREEMENT

19.1    In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.  In the event this Agreement becomes null and void for any reason, sanofi-aventis, Counsel for sanofi-aventis, the Class Representatives, and Class Counsel agree that they shall from that date forward keep strictly confidential the terms of the Agreement, the existence of the Agreement, any information concerning the Agreement, or any of the discussions and or negotiations regarding the Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: December 24, 2009          SANFORD WITTELS & HEISLER, LLP

                                  By:_____

                                  Steven L. Wittels, Esq.
                                  1350 Avenue of the Americas, Suite 3100
                                  New York, NY 10019
                                  Tel. (646) 723-2947
                                  Fax  (646) 723-2948

                                  David Sanford, Esq.
                                  1666 Connecticut Ave., NW, Suite 310
                                  Washington, D.C. 20009
                                  Tel. (202) 742-7780
                                  Fax  (202) 742-7776

                                  LAW OFFICES OF GRANT E. MORRIS
                                  Grant Morris, Esq.
                                  1666 Connecticut Ave., NW, Suite 310
                                  Washington, D.C. 20009
                                  Tel. (202) 742-7783
                                  Fax  (202) 742-7776


                                  Counsel for Class Representatives and
                                  Proposed Settlement Class Members


Dated: December 24, 2009          MORGAN, LEWIS & BOCKIUS LLP



                                  By:_____

                                  Michael S. Burkhardt, Esq.
                                  1701 Market St
                                  Philadelphia, PA 19103
                                  Tel.: (215)-963-5130
                                  Fax: (215)-963-5001


                                  Counsel for Defendant sanofi-aventis U.S. LLC